1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11  KHENE KEOVONGSA,                    Case No.: 3:16-CV-00842-BTM-NLS

12                        Plaintiff,    **ORDER GRANTING**
                                        **PLAINTIFF'S MOTION FOR**
13  v.                                  **SUMMARY JUDGMENT AND**
                                        **DENYING DEFENDANT'S**
14  CAROLYN W. COLVIN, Acting           **CROSS-MOTION FOR**
    Commissioner of Social Security,    **SUMMARY JUDGMENT,**
15                                       **VACATING ALJ'S DECISION,**
                          Defendant.    **AND REMANDING FOR**
16                                       **FURTHER PROCEEDINGS.**
17

18

19          Plaintiff Khene Keovongsa ("Plaintiff") seeks judicial review of Acting

20  Commissioner of Social Security, Carolyn Colvin's ("Defendant") denial of her

21  application for Supplemental Security Income ("SSI").  (ECF No. 1, Compl.)

22  Plaintiff and Defendant have filed motions for summary judgment.  (ECF Nos.

23  14,16.)  For the reasons discussed below, the Court **GRANTS** Plaintiff's motion

24  for summary judgment, **DENIES** Defendant's cross-motion for summary

25  judgment, **VACATES** the Commissioner's decision, and **REMANDS** for further

26  proceedings.

27              **I. PROCEDURAL BACKGROUND**

28          On April 16, 2012, Plaintiff filed for SSI benefits pursuant to Title XVI of the

1

1 Social Security Act, 42 U.S.C. § 1381. (Administrative Record ("AR") 157–65.)

2 The Social Security Administration denied the claims both on initial review and

3 later upon reconsideration. (AR 57–79.) On March 21, 2014, Plaintiff's claim

4 was heard by Administrative Law Judge ("ALJ") Mason Harrell. (AR 15–22.) On

5 April 11, 2014, the ALJ issued a decision denying benefits and finding that

6 Plaintiff was not under a disability on the date the application was filed. (Id.)

7 Plaintiff filed a request for review with the Appeals Council, which subsequently

8 denied her request on February 25, 2016. (AR 1–4.) The ALJ's decision then

9 became the final decision of the Commissioner of Social Security. Plaintiff seeks

10 judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

11 ## II. ALJ'S FINDINGS AND CONCLUSIONS

12 The ALJ conducted the five-step sequential analysis set forth in 20 C.F.R. §

13 404.1520.[1]

14 At step one the ALJ found that Plaintiff had not engaged in substantial

15 gainful activity since April 16, 2012—the application date. (AR 17.)

16 Next, the ALJ found that Plaintiff had the following medically determinable

17 impairments: postural back pain and depression (20 C.F.R. § 416.921 *et seq.*).

18 (Id.)

19 However, at step two, the ALJ determined that Plaintiff did not have an

20 impairment or combination of impairments that significantly limited her ability to

21 perform basic work related activities for 12 consecutive months, and therefore,

22

23

24 [1] Under the Social Security Regulations, the determination of whether a claimant is disabled within the meaning of the Social Security Act is a five step process set forth at 20 C.F.R. § 404.1520. Under the test, "a claimant must be found disabled if she proves: (1) that she is not presently engaged in any substantially gainful activity, (2) that

25 her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the

26 regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant

27 established a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is

28 made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education." Treichler v. Comm'r of SSA, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014).

3:16-CV-00842-BTM-NLS

did not have a severe impairment or combination of impairments. (AR 17.) Having reached this determination, the ALJ did not proceed to the next step and instead found that she was not disabled. (AR 22.)

## III. STANDARD

The Commissioner's denial of benefits may be set aside if it is based on legal error or is not supported by substantial evidence. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997). Substantial evidence is more than a mere scintilla but less than a preponderance. *Id.* Substantial evidence is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Secretary of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). A denial of benefits must be upheld if the evidence could reasonably support either affirming or reversing the ALJ's decision. *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir.2002). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

## IV. MEDICAL EVIDENCE

**A. Evidence of Physical Impairments**

### 1. Dr. Keith Cunningham

On March 27, 2008, examining physician Dr. Keith Cunningham examined Plaintiff and determined that she was suffering from back pain, but had no physical limitations. (AR 267–272.) Dr. Cunningham found that Plaintiff could stand and lift her arms normally. (AR 268.) When examining her back, Dr. Cunningham stated that she reported some mild pain from the midthoracic to the lower lumbar spine. (Id.) However, there was no muscle spasm and the straight

leg raise test was negative.  (Id.)  Based on these observations, he determined her condition did not impose any limitations.  (AR 269.)

### 2. Dr. Paul Jain

On June 9, 2010, examining physician Dr. Paul Jain performed a physical examination of Plaintiff.  (AR 273–280.)  Plaintiff complained of mild to moderate low back pain and neck pain for approximately ten years.  (AR 273.)  Plaintiff denied any type of functional limitations.  (AR 274.)  Dr. Jain reported that the range of motion of her neck was within normal range.  (AR 275.)  As to Plaintiff's back, Dr. Jain reported no tenderness in response to palpation in the midline or paraspinal areas.  (AR 276.)  Additionally, the straight leg raising test was negative at 90 degrees.  (Id.)  Despite Plaintiff's subjective complaints, Dr. Jain found no objective findings regarding her neck and low back pain.  (AR 278.)

### 3. Dr. Frederick Close

On August 3, 2012, Dr. Close examined Plaintiff.  (AR 281–284.)  An examination of her cervical spine revealed some minimal tenderness and spasm on the right side of Plaintiff's cervical spine.  (AR 282.)  However, the tests were negative and the range of motion was normal.  (Id.)  As to her dorsolumbar spine, Dr. Close found no palpable spasm but found a mild dorsal kyphosis, mild increase lumbar lordosis, and mild tenderness.  (Id.)  Dr. Close diagnosed Plaintiff with postural back pain and limited her to performing medium work.  (AR 283–84.)

### 4. State Agency Physical Medical Consultants

On initial review, Dr. D. Haaland reviewed the medical evidence, including Dr. Cunningham's, Dr. Jain's, and Dr. Close's opinions and determined that there was no support for a finding that Plaintiff had any functional limitations associated with a severe physical impairment.  (AR 63.)  In reaching his conclusion, Dr. Haaland gave less weight to Dr. Close's findings and concluded that he relied heavily on Plaintiff's subjective complaints and that the totality of

the evidence did not support his findings. (AR 66.) On reconsideration, Dr. G. Spinka similarly found no severe impairments and rejected Dr. Close's findings for lack of objective support. (AR 68–78.)

### 5. Dr. James S. Grisolia

On August 17, 2012, Dr. James Grisolia diagnosed Plaintiff with chronic lumbosacral pain syndrome. (AR 291.) Dr. Grisolia found that Plaintiff's memory and cognitive functions were severely affected. (Id.) Dr. Grisoli also determined that Plaintiff was "certainly severely disabled and should be rated on her psychiatric disability." (Id.) Additionally, he stated that Plaintiff "will be unable to stand or walk on more than infrequent basis due to chronic back injury." (Id.)

### 6. Dr. Nadine Sidrick

From 2013 to 2014, Dr. Nadine Sidrick treated Plaintiff for moderate lumbar scoliosis and severe mental illness. (AR 315.) Dr. Sidrick, relying in part on x-rays, diagnosed Plaintiff with lumbar scoliosis, which she found affected Plaintiff's ability to walk and stand. (AR 317.) Dr. Sidrick determined that Plaintiff could not stand or walk for more than one hour at a time without taking a break of fifteen minutes. (AR 317–18.) Dr. Sidrick also found that Plaintiff could only stand or walk for a maximum of three hours a day. (Id.) She limited Plaintiff to sedentary type activity. (Id.)

## B. Evidence of Mental Impairment

### 1. Dr. Harry C. Henderson

Dr. Henderson served as Plaintiff's psychiatrist since 2012. (AR 358.) In a December 19, 2013 report, Dr. Henderson provided a psychiatric evaluation for Plaintiff. (AR 335–36.) Based on his own treatment notes and medical documents, Dr. Henderson diagnosed her with major depression and chronic post-traumatic stress disorder. (AR 336.) He stated that Plaintiff had marked restriction of activities of daily living, difficulties in maintaining social functioning and often could not concentrate which results in an inability to complete tasks in

a timely manner in work settings or elsewhere.  (Id.)  He found that as a result of strong medication, Plaintiff suffered from chronic fatigues and sedation.  (Id.)  Finally, Dr. Henderson concluded that her physical impairments coupled with her depression and post-traumatic stress syndrome would prevent her from gainful employment.  (Id.)

### 2. Dr. H. Douglas Engelhorn

On August 7, 2012, Dr. Engelhorn performed a psychiatric evaluation of Plaintiff.  (AR 285–87.)  Plaintiff stated that she suffered from chronic low-grade depression for the past four to five years, and experienced some sadness and depression on almost a daily basis.  (AR 286.)  However, Dr. Engelhorn did not find Plaintiff to come across as being a particularly depressed or sad person.  (Id.)  Dr. Engelhorn found no evidence of active depression or excessive levels of anxiety, but did include possible major depression as part of his diagnostic impression.  (AR 287.)

### 3. Dr. Milton Lessner

On December 2, 2013, Dr. Lessner wrote a report summarizing his psychological assessments performed upon Dr. Henderson's request.  (AR 303–14.)  Dr. Lessner performed several tests including the Mooney Problem checklist, the Bender Gestalt, the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"), and the Beck Depression Inventory.  (AR 309.)  The MMPI-2 test provided evidence of profoundly serious psychopathology, though Dr. Lessner noted that part of the reason for such a high infrequency scale score may be exaggerated symptoms as a plea for help.  (AR 309.)  As to the Bender Gestalt Test, Dr. Lessner believed her reproductions suggested psychotic conditions along with paranoia.  (AR 312.)  He gave Plaintiff a GAF score of 30.  (AR 314.)

### 4. State Agency Mental Medical Consultants

On initial review, H. Hurwitz, M.D. opined that acculturation problems are the primary limitation and that there was no evidence of a severe impairment.

1    (AR 64.)  On reconsideration, Harvey Bilik, Psy. D. reviewed Plaintiff's record and

2    affirmed the finding of no severe mental impairment.  (AR 75.)

3    **V. DISCUSSION**

4    The Social Security Act defines "disability" as the "inability to engage in any

5    substantial gainful activity by reason of any medically determinable physical or

6    mental impairment which can be expected to result in death or which has lasted

7    or can be expected to last for a continuous period of not less than 12 months."

8    42 U.S.C. § 423(d)(1)(A).  While the regulations provide that the existence of a

9    medically determinable physical or mental impairment must be established by

10    medical evidence consisting of signs, symptoms, and laboratory findings,

11    symptoms alone are not enough.  *Ukolov v. Barnhart*, 420 F.3d 1003, 1005 (9th

12    Cir. 2005).

13    **A. Whether there is Substantial Evidence to Support the ALJ's Decision**

14    Step two "is 'a de minimis screening device [used] to dispose of groundless

15    claims.'"  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting *Smolen v.*

16    *Chater*, 80 F.3d 1273, 1290 (9th Cir. Cir. 1996)).   In the Ninth Circuit, "[a]n

17    impairment or combination of impairments may be found not severe only if the

18    evidence established a slight abnormality that has no more than a minimal effect

19    on an individual's ability to work."  (*Id.* at 686) (internal citations omitted).  "[A]n ALJ

20    may find that a claimant does not have a severe impairment or combination of

21    impairments only when his conclusion is 'clearly established by medical evidence.'"

22    (*Id.* at 687 (quoting Social Security Ruling ("SSR") 85–28, 1985 SSR LEXIS 19)).

23    Here, the ALJ determined at step two that Plaintiff did not have a severe

24    impairment or combination of impairments.  Having made this finding, the ALJ

25    ended his inquiry and concluded she was not disabled.  The Court, therefore,

26    reviews the record to determine "whether the ALJ had substantial evidence to find

27    that the medical evidence clearly established that [Plaintiff] did not have a

28    medically severe impairment or combination of impairments."  *See Webb*, 433 F.3d

3:16-CV-00842-BTM-NLS

1 | at 687.

2 | ***1. ALJ's Decision Regarding Plaintiff's Physical Impairment***

3 | Plaintiff argues that the ALJ's determination that her physical impairment is

4 | not severe is not supported by substantial evidence. Specifically she contends

5 | that he erred in disregarding the opinions of examining physician, Dr. Close, and

6 | of her treating physician, Dr. Sidrick.

7 | Courts distinguish among the opinions of treating physicians, physicians who

8 | examine but do not treat the claimant, and those who neither examine nor treat the

9 | claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, the

10 | opinions of examining physicians are afforded more weight than those of non-

11 | examining physicians, and the opinions of examining non-treating physicians are

12 | afforded less weight than those of treating physicians." *Orn v. Astrue*, 495 F.3d

13 | 625, 631 (9th Cir. 2007). When a treating physician's opinion or an examining

14 | physician's opinion is not contradicted by another doctor, an ALJ may only reject

15 | it for "clear and convincing reasons" supported by substantial evidence in the

16 | record. *Lester*, 81 F.3d at 830. Even when a treating physician's opinion or an

17 | examining physician's opinion is contradicted, the ALJ still may not reject their

18 | opinion without providing "specific and legitimate reasons" supported by

19 | substantial evidence in the record. *Id.* This can be done "by setting out a detailed

20 | and thorough summary of the facts and conflicting clinical evidence, stating his

21 | interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747,

22 | 753 (9th Cir. 1989).

23 | In concluding that Plaintiff suffered from no severe physical impairments,

24 | the ALJ gave significant weight to the opinions of Dr. Cunningham and Dr. Jain,

25 | as well as Dr. Haaland and Dr. Spinka. (AR 19–20.) In justifying his reliance on

26 | these opinions, the ALJ explained that "these physicians are generally consistent

27 | in that they all assess the claimant does not have a severe physical impairment

28 | and thus no corresponding limitations." (Id.) The ALJ stated that the "opinions

are all generally supported by the record as a whole . . . ." (Id.)

The ALJ gave little weight to Dr. Close's opinion because he diagnosed Plaintiff with only postural back pain, but opined she would be limited to medium work. (AR 20.) The ALJ found that given the negative physical examinations, Plaintiff's postural back pain was not a severe impairment. (Id.) As to Dr. Sidrick, the ALJ gave no weight to her opinion because it was "without substantial support from any objective clinical or diagnostic findings." (AR 20.) Despite having a treating relationship with Plaintiff, the ALJ noted that the history was brief and the course of treatment pursued by Dr. Sidrick was not consistent with Plaintiff's alleged disability. (Id.)

Dr. Cunningham and Dr. Jain rendered their opinions two and four years before the date of application. The state agency physical medical consultants primarily relied on the outdated opinions in concluding that Plaintiff had no severe impairments. They did not benefit from Dr. Sidrick's opinion, as it was provided after their reviews. Nevertheless, the ALJ relied on these opinions to reject those rendered more recently by Dr. Close and Dr. Sidrick and conclude that Plaintiff did not suffer from a severe physical impairment. While the ALJ provided reasons for rejecting the opinions of Dr. Sidrick and Dr. Close, the Court finds that the ALJ's decision was not supported by substantial evidence in the record.

In the Ninth Circuit, "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th Cir. 2008). Thus, the outdated opinions of Dr. Cunningham and Dr. Jain do not constitute substantial evidence to justify the ALJ's rejection of Dr. Close's or Dr. Sidrick's opinions. Additionally, the ALJ rejected Dr. Sidrick's opinion in part because it was "without substantial support from any objective clinical or diagnostic findings . . . ." (AR 20.) However, Dr. Sidrick diagnosed Plaintiff with moderate lumbar scoliosis based on x-rays. (AR 315). While those were not provided in the record, the ALJ was under a duty to supplement the record. *See*

*Webb*, 433 F.3d at 687 ("The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous.").  The evidence was sufficiently ambiguous given that the outdated opinions contrasted with the more recent opinions of Dr. Close and Dr. Sidrick.

### 2. ALJ's Decision Regarding Plaintiff's Mental Impairments

Plaintiff also challenges whether the ALJ had substantial evidence to determine that her mental impairment was not severe.  She argues that he erred in rejecting Dr. Henderson's and Dr. Lessner's opinions.

The ALJ primarily relied on the opinions of Drs. Engelhorn, Hurwitz, and Bilik in concluding that Plaintiff suffered from no severe mental impairments.  The ALJ gave no weight to Dr. Lessner's diagnostic impression and GAF score because it contrasted with the other evidence in the record.  (AR 21.)  However, Dr. Lessner's opinion did not entirely contradict with that of Dr. Engelhorn, as Dr. Engelhorn's diagnostic impression included possible major depression.  (AR 287.)  Additionally, the ALJ rejected Dr. Lessner's opinion, in part, because he only saw Plaintiff in a one-time setting, yet gave primary weight to that of Dr. Engelhorn's who also only examined Plaintiff once.  (AR 303-314.)  As to Dr. Henderson's opinion, the ALJ gave it little weight because he found that it was inadequately supported by clinical findings.  Dr. Henderson, however, did perform a series of concentration and memory exercises to support his finding that her impairments affect her daily activities.  The evidence in the record supporting the existence of a mental impairment was enough to clear the low bar at step two.

## C. Credibility Determination

Lastly, Plaintiff argues that the ALJ erred in making an adverse credibility finding.

An ALJ is not required to accept as true every allegation of disabling pain by

3:16-CV-00842-BTM-NLS

the claimant. *See Orn*, 495 F.3d at 635. In evaluating the claimant's testimony, the ALJ may consider inconsistencies between the claimant's testimony and conduct, an unexplained or inadequately explained failure to seek or follow medical treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ's rationale must contain a "thorough discussion and analysis of the objective medical evidence and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations." SSR 95-5P, 1995 WL 670415, at *3 (Oct. 31, 1995).

An ALJ engages in a two-step analysis when assessing the credibility of a claimant's symptom testimony. *Molina*, 674 F.3d at 1112. First, the ALJ "must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (citing *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). When the claimant has presented such evidence, and the case lacks evidence of malingering on behalf of the claimant, the ALJ may reject a claimant's testimony regarding the severity of her symptoms only if the ALJ "makes specific findings stating clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1283-84.

Plaintiff testified that she suffers from a constant pain in her neck and back, as well as from depression. (AR 38.) The medication that she takes makes her very sleepy which causes her to sleep throughout the day. (AR 39.) Her activities are limited to laying down and watching television. (Id.) The pain she suffers also prevents her from lifting any weight. (Id.) Plaintiff stated that her daughter takes care of the household chores, including cooking for her. (Id.) In addition to the physical pain, Plaintiff also stated that she experiences crying episodes and often hears voices. (AR 40.)

The ALJ determined that the "claimant's medically determinable

3:16-CV-00842-BTM-NLS

impairments could reasonably be expected to produce the alleged symptoms"
but that her "statements concerning their intensity, persistence and limiting
effects of these symptoms are not entirely credible." (AR 18.) In making an
adverse credibility determination, the ALJ stated that the medical objective
evidence and the opinions of the examining and reviewing physicians
undermined Plaintiff's claims of disabling symptoms. (AR 18–19.) As discussed
above, the objective and opinion evidence rendered by Dr. Cunningham and Dr.
Jain are of limited relevance, as they are from 2008 and 2010. *See Carmickle*,
533 F.3d at 1165. While Dr. Close's tests were negative, he did find minimal
tenderness and spasm on the right side of Plaintiff's cervical spine, and as it
related to her dorsolumbar spine, diagnosed her with mild dorsal kyphosis, mild
increase lumbar lordosis, and mild tenderness. (Id.) Therefore, the ALJ's first
two reasons do not constitute "clear and convincing" reasons for rejecting
Plaintiff's subjective testimony.

The ALJ also noted that Plaintiff's inconsistent statements undermined her
credibility. (AR 19.) Specifically, the ALJ stated that her statements were
inconsistent because she reported only low-grade symptoms whereas the
narrative statements made by her medical sources reported disabling pain and
deviant psychotic mental impairments. The ALJ placed importance on the fact
that Plaintiff reported only "chronic low-grade depression" to Dr. Engelhorn,
described her back pain as an "ache" to Dr. Cunningham, and told Dr. Jain that
she experienced mild to moderate back pain. As discussed above, because she
met with Dr. Cunningham and Dr. Jain two and four years before the date of her
application, their reports, including her alleged complaints, are of limited
relevance. Her symptoms could have worsened, which is consistent with the
opinions of the more recent physicians, including Dr. Close's. As to her
description of her mental impairment to Dr. Engelhorn, this sole discrepancy is
not sufficient enough to deem her symptoms groundless and reject her testimony

under step two of the sequential analysis.  *See Webb*, 433 F.3d at 688.

The Court concludes that the ALJ lacked substantial evidence to find that the medical evidence *clearly established* Plaintiff's lack of medically severe impairment or combination of impairments at step two.  On remand, the ALJ should proceed with the sequential analysis and consider the cumulative effect of Plaintiff's impairments.  The Court, however, expresses no opinion as to Plaintiff's ability to meet her burden at step 3, 4, and 5.  *See Id.*

## III. CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment [ECF No. 14] is **GRANTED** and Defendant's cross-motion for summary judgment [ECF No. 16] is **DENIED**. The Commissioner's decision is **VACATED** and this matter is **REMANDED** for further proceedings.

**IT IS SO ORDERED.**

Dated: September 29, 2017

Barry Ted Moskowitz, Chief Judge
United States District Court

3:16-CV-00842-BTM-NLS